PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL ENRIQUE MARIN, | ) | |
| | ) | CASE NO. 4:12cv508 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CORRECTIONS CORPORATION | ) | |
| OF AMERICA, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*Pro se* Plaintiff Daniel Enrique Marin filed this *Bivens*[1] action against Corrections Corporation of America[2] ("CCA"), Northeast Ohio Correction Center ("NEOCC") Warden M. Pugh, and NEOCC Chaplain William Zeyer. In the Complaint, Plaintiff alleges that the Defendants have not fully accommodated his practice of his religion. He seeks declaratory, injunctive, and monetary relief.

## I. Background

Plaintiff claims Chaplain Zeyer has not purchased items requested by Plaintiff for use in his practice of Santeria religion. ECF No. 1 at 2. Plaintiff contends that he has been denied access to divination tools, including: palm oil, cocoa butter sticks, egg powder, movies, CD's, divination powder, a Board of Ifa, "a chain of divination" or Ekule, books on Santeria and Ifa,

---

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

[2] Plaintiff identifies this Defendant as "Correctional Corporation of America;" however, the Court takes notice that the name of the entity is "Corrections Corporation of America."

(4:12cv508)

water from Florida, an Osha Mat, Dry fish in powder, herbs, candles, 21 shells, tobacco, and Irofa. ECF No. 1 at 3. He further alleges that he should be permitted to keep these items in his cell, along with a television, audio-visual equipment, videos, tapes, CD's, books, publications, and art work. ECF No. 1 at 3. Plaintiff also requests that he be provided with an alter and alter cloths. ECF No. 1 at 4.

Although Plaintiff lists only three Counts, his Complaint sets forth six causes of action. He asserts claims under the First Amendment for denial of free exercise of his religion and establishment of religion, and claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). He contends that he was denied procedural due process and equal protection in violation of the Fourteenth Amendment. Finally he contends that "[a]lthough Warden Pugh did not commit the due process violations, he became responsible for them when he failed to correct them in the course of his supervisory responsibilities, and affirmed the rejected [sic] decision from responding staff members in this facility." ECF No. 1 at 6.

## II. Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] *Neitzke v.*

---

[3] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the Plaintiff and without service of process on the Defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*,

2

(4:12cv508)

*Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III. Law and Analysis

**A.** 42 U.S.C. § 1983

While Plaintiff indicates he is asserting claims under 42 U.S.C. § 1983, that statute is not applicable in this case. To establish a prima facie case under 42 U.S.C. § 1983, Plaintiff must

---

784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

3

(4:12cv508)

assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. Plaintiff, however is a federal prisoner incarcerated in a private prison.

A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). Here, the defendants are not state officials, they are not acting on behalf of or obtaining significant aid from the State of Ohio, nor are they exercising a power that is reserved exclusively for the State of Ohio. Plaintiff cannot hold Defendants liable under §1983.

**B.** ***Bivens* Claims**

*Bivens* provides a limited cause of action against individual federal government officers acting under color of federal law alleged to have acted unconstitutionally. *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001). *Bivens*' purpose is to deter individual federal officers, not the agency, from committing constitutional violations. A *Bivens* action therefore cannot be brought against an entity such as the federal prison, the Bureau of Prisons, or the United States Government. *Id.*

4

(4:12cv508)

CCA, which owns and operates NEOCC, is a private corporation. To avoid imposing asymmetrical liability costs on private prison facilities, the Supreme Court declined to expand *Bivens* to provide this cause of action against a private prison corporation. *Id.* at 70-74. (pointing out that when a prisoner in a Bureau of Prisons facility alleges a constitutional deprivation, his only remedy lies against the offending individual officer). Plaintiff therefore cannot bring *Bivens* claims against CCA.

The Supreme Court further declined to extend *Bivens* to the employees of a private prison under certain circumstances. *Minneci v. Pollard*, 132 S. Ct. 617, 622-23 (2012). "A federal prisoner seeking damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving negligent exposure to infectious disease which is at issue here), must seek a remedy under state tort law." *Id.* at 626. A *Bivens* remedy cannot be implied.

While *Minneci* clearly bars Eighth Amendment claims against individual employees of a private prison for denial of medical care, it remains unclear whether First or Fourteenth Amendment claims, such as those asserted here by Plaintiff, are of the type which fall within the scope of traditional tort law. *Id.* at 626 ("[W]e can decide whether to imply a *Bivens* action in a case where an Eighth Amendment claim or state law differs significantly from those at issue here when and if such a case arises. The possibility of such a different future case does not provide sufficient grounds for reaching a different conclusion here"). Accordingly, the Court will consider Plaintiff's First and Fourteenth Amendment claims on their merits.

5

(4:12cv508)

Assuming without deciding that this case can proceed against the individual Defendant employees of the private prison, Plaintiff fails to state a claim upon which relief may be granted against Warden Pugh. Plaintiff indicates that the Chaplain has not purchased items of a religious nature for him; however, there are no allegations against the Warden. In order to state a claim under *Bivens*, Plaintiff must allege that the individual Defendant was personally involved in the alleged deprivation of his constitutional rights. *See Nwaebo v. Hawk-Sawyer*, No. 03-3801, 2003 WL 22905316, at *1 (6th Cir. Nov. 28, 2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976); *Kesterson v. Fed. Bureau of Prisons*, No. 02-5630, 2003 WL 1795886 (6th Cir. April 2, 2003); *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983)); *see also Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir.2003) (to be subject to *Bivens* liability, a defendant must have had "direct, personal participation" in the constitutional violation); *Mueller v. Gallina*, 311 F.Supp.2d 606, 608 (E.D. Mich. 2004). Absent allegations of the Warden's personal involvement in this matter, he cannot be held personally liable in this action.

It appears Plaintiff seeks to hold the Warden liable for the actions of his employees. *Respondeat superior* is not a proper basis for liability under *Bivens. Jones v. City of Memphis,* 586 F.2d 622, 625 (6th Cir.1978); *see Okoro v. Scibana,* No. 02-1439, 2003 WL 1795860 (6th Cir. Apr. 1, 2003). The liability of supervisors cannot be based solely on the right to control employees, nor "simple awareness of employees' misconduct." *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir.2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984). Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in

6

(4:12cv508)

some other way directly participated in it.'" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982)).  Plaintiff has not alleged facts to suggest how the Warden directly participated in the decisions described in the Complaint and cannot be held liable based solely on the actions of his employees.

### C. First Amendment - Free Exercise of Religion

Plaintiff claims Chaplain Zeyer interfered with the free exercise of his religion. The First Amendment to the United States Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The First Amendment is applicable to the States by virtue of its incorporation by the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940).

Inmates retain the First Amendment right to exercise their religion subject to reasonable restrictions and limitations.  *See Bell v. Wolfish,* 441 U.S. 520, 549-51 (1979).  The Court must first determine whether Defendants' policies deprive Plaintiff of the right to express his religion. More specifically, the Court must evaluate the quality of the claims alleged to be religious.  *See Wisconsin v. Yoder,* 406 U.S. 205, 215 (1972).  To be protected by the Constitution, the particular belief must be religious in the person's own scheme of things and must be sincerely held."  *Flagner v. Wilkinson,* 241 F.3d 475, 481 (6th Cir.2001).

 If the belief is found to be both religious in nature and sincerely held by the prisoner, the Court must determine whether a substantial burden has been placed on that belief by the Defendants.  The Sixth Circuit has stated that a "substantial burden" places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v.*

(4:12cv508)

*Charter Twp. Meridian*, Nos. 05-2309, 06-1210, 2007 WL 4322157 at *5 (6th Cir. Dec.10, 2007).

Where the Defendants' policy is deemed to place a substantial burden on a sincerely held religious belief, then the Court must determine whether the Defendants' policy "is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). The circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs," requiring a court to "balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the State's legitimate interests in operating its prisons." *Walker v. Mintzes,* 771 F.2d 920, 929 (6th Cir.1985). Several factors are considered in determining the reasonableness of a prison regulation. First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89. Second, the Court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id*. at 90. Third, the Court should weigh the impact that the asserted constitutional right will have on the rights of prison guards and other inmates, as well as the allocation of prison resources. *Id*. Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id*.

As maintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures. *See Bell v. Wolfish,* 441 U.S. 520, 546-47 (1979). "[B]ecause 'the problems of prisons in America are complex and intractable,' and because Courts are particularly 'ill equipped' to deal with these problems, [Courts] generally have deferred to the judgments of

8

(4:12cv508)

prison officials in upholding these regulations against constitutional challenge." *Shaw v. Murphy*, 532 U.S. 223, 229, (2001) (quoting *Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974)). Plaintiff, therefore, bears the burden of "overcom[ing] the presumption that the prison officials acted within their broad discretion." *Shaw*, 532 U.S. at 232.

Here, Plaintiff claims he practices the faith of Santeria. He lists numerous items which he claims are very important to the practice of his faith. He states, without explanation, that the Defendants "denied him access to specific Santeria (Yoruba) divination tools." ECF No. 1 at 3. He also claims he should be permitted to keep in his cell "items of religious nature" including a television, audio-visual equipment, videos, CD's , books, publications and artwork. ECF No. 1 at 3.

It appears that Plaintiff's belief is religious in nature, and the Court will assume that it is sincerely held by Plaintiff. The Court must therefore determine whether the actions of the Defendants place a substantial burden on Plaintiff's practice of his religion. This does not mean that prisoners are not entitled to the "best possible means of exercising their religio[n]." *A'la v. Cobb*, 208 F.3d 212 (6th Cir.2000). Defendants are deemed to place a substantial burden on a religious practice only if they put "substantial pressure on [the plaintiff] to modify his behavior and to violate his beliefs." *Living Water Church of God*, Nos. 05-2309, 06-1210, 2007 WL 4322157 at *5. For example, while the Islamic faith requires adherents to only consume Halal meats, the prison may accommodate that belief by serving vegetarian meals to Muslim inmates. *See Benson v. Corrections Corp. of America*, No. 4:08CV469, 2009 WL 2461016, at *2-3 (N.D. Ohio Aug. 7, 2009). Although the inmate may prefer to be served a meal with a properly

9

(4:12cv508)

prepared Halal meat entree, he can consume the vegetarian meal without violating his beliefs. *Id.* A simple allegation that the inmate was denied Halal meat is not sufficient to demonstrate that a defendant violated his constitutional rights.

In this case, Plaintiff does not explain what is required of his faith, how the listed "divination tools" are used in his faith and what actions Defendants took that caused him to modify his behavior and violate his beliefs. Simply stating that the items requested but not provided are part of his faith is not sufficient to state a claim for the denial of free exercise of religion.

### D. First Amendment - Establishment of Religion

Plaintiff also alleges the Chaplain violated the Establishment Clause of the First Amendment. The Establishment Clause states, "Congress shall make no law respecting an establishment of religion." U.S. CONST. Amend. I, Cl. 1. To determine whether a government action has the effect of establishing religion, the United States Supreme Court developed a three-part test. *See Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971). First, the Court must determine whether the action in question has a primarily secular purpose. *Id.*; *see McCreary Cnty v. ACLU of Ky.*, 545 U.S. 844, 859 (2005) ("McCreary"); *ACLU v. Mercer Cnty.*, 432 F.3d 624, 635 (6th Cir. 2005); *ACLU v. McCreary Cnty*, 354 F.3d 438, 446 (6th Cir. 2003) ("McCreary I"). Second, the Court must examine the action to determine if its primary effect is to endorse religion. *Id.* Finally, the Court must determine if the action fosters an excessive entanglement with religion. *Lemon*, 403 U.S. at 612. If a governmental action fails any of these three tests, it violates the Establishment Clause of the First Amendment. *McCreary I*, 354 F. 3d at 458.

(4:12cv508)

### 1. Primary Purpose

First, the Court must determine whether Chaplain Zeyer's action had a primary purpose to promote or establish a religion. In determining the government's primary purpose under the first prong of the *Lemon* test, the government's stated reasons for taking the action will generally receive deference from the reviewing court. *ACLU v. McCreary Cnty*, 607 F.3d 439, 445 (6th Cir. 2010) ("McCreary II"). The secular purpose, however, must be genuine, and not merely secondary to a religious objective. *Id.* Here, Plaintiff states only that the Chaplain would not purchase certain items used as divination tools. That allegation, alone, does not suggest that the Chaplain acted for the primary purpose of promoting the practice of some other unidentified faith.

### 2. Endorsing Religion

The second prong of the *Lemon* tests asks whether "the government action has the purpose or effect of endorsing religion." *Mercer*, 432 F.3d at 635. Under the endorsement test, the government violates the Establishment Clause when it acts in a manner that a reasonable person would view as an endorsement of religion. This is also an objective standard, requiring the Court to ask whether a reasonable person would perceive that the Defendants's action had the effect of endorsing a religion. *Id.* Again, Plaintiff has not alleged any specific facts concerning the Chaplain's actions and therefore it is impossible to determine if a reasonable person would conclude that the action endorsed another faith.

### 3. Entanglement with Religion

Due to the nature of prison, some interaction between Church and State is inevitable.

(4:12cv508)

The alleged entanglement must therefore be excessive before it runs afoul of the Establishment Clause. *Johnson v. Dev. Corp. of Cnty of Oakland*, 241 F.3d 501, 515 (6th Cir. 2001). To determine whether there is excessive government entanglement, the Court looks at the character and purpose of the institution that benefits from the action, the nature of the aid that the State provides, and the resulting relationship between government and religious authority. *Id.* In this case, Defendant's denial of access to divination tools has no apparent entanglement with any religion.

Plaintiff failed to satisfy any of the three prongs of the *Lemon* test. His claims for violation of the Establishment Clause must be dismissed.

### E. RLUIPA

Plaintiff also includes a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). This statute regulates governmental activities. RLUIPA's definition of "government" includes states and their agencies and departments, as well as persons acting under color of State law. 42 U.S.C. § 2000cc-5(4) (A); *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir.2009). Plaintiff is an inmate under Federal custody, detained at NEOCC under color of Federal law. There are no implied private rights of action against "private entities" acting under color of Federal law. *See Malesko,* 534 U.S. at 70; *Benson,* No. 4:08CV469, 2009 WL 2461016, at \*2-3. The RLUIPA does not apply to Federal inmates. *Id.*

### G. Fourteenth Amendment

Plaintiff states two claims under the Fourteenth Amendment: denial of procedural due process and equal protection. He does not, however, allege facts to support or explain these

12

(4:12cv508)

causes of action.

### 1. Procedural Due Process

To establish a claim for denial of procedural due process, Plaintiff must plead and prove either that he was deprived of liberty or property as a result of an established State procedure that itself violates due process rights; or that Defendants deprived him of liberty or property pursuant to a random and unauthorized act and available State remedies would not be adequate to redress the deprivation. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton,* 721 F.2d 1062, 1064 (6th Cir. 1983). Plaintiff has given no indication that he is challenging an established State procedure, statute or local ordinance. Instead, it appears that he is asserting that he was deprived of some property due to unauthorized acts of Defendants.

To establish a procedural due process claim based upon alleged unauthorized acts of the defendants, Plaintiff must not only identify the property he believes to have been taken from him, but must also plead and prove that State remedies for redressing the wrong are inadequate. *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064. There is a remedy available in the Ohio Court of Claims. Plaintiff has not claimed the State remedy is inadequate. He, therefore, has not stated a claim for denial of procedural due process.

### 2. Equal Protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 -682 (6th Cir. 2011); *Radvansky v. City of Olmsted*

(4:12cv508)

*Falls*, 395 F.3d 291, 312 (6th Cir.2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Plaintiff has not alleged disparate treatment. He claims only that the Chaplain and Warden treat his religion less favorably than the treatment shown other religious groups. He does not identify the other religious groups and provides no facts to suggest how they were treated more favorably than his own. Principles requiring generous construction of *pro se* pleadings are not without limits. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). A Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See* Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). Plaintiff cannot establish a viable claim that meets pleading notice requirements by providing only a legal conclusion, unsupported by facts, that his constitutional rights were violated. *Iqbal*, 129 S.Ct. at 1949.

## IV. Conclusion

For the reasons above, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

(4:12cv508)

| July 29, 2012 | */s/*Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |